IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

INVUE SECURITY PRODUCTS INC.,      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      C.A. No.
                                   )
INDYME SOLUTIONS, LLC,             )      JURY TRIAL DEMANDED
                                   )
            Defendant.             )

## COMPLAINT

Plaintiff, InVue Security Products Inc. ("InVue"), by and through its undersigned counsel, hereby files this Complaint against Defendant, Indyme Solutions, LLC ("Indyme"), for noninfringement of U.S. Patent No. 11,928,694 ("the '694 Patent"), U.S. Patent No. 12,271,910 ("the '910 Patent"), and U.S. Patent No. 12,417,661 ("the '661 Patent") (collectively, the "Patents-in-Suit"). Copies of the Patents-in-Suit are attached as Exhibits A-C.

## THE PARTIES

1.      Plaintiff InVue is a company organized and existing under the laws of the United States of America and is incorporated in Ohio with its principal place of business at 9201 Baybrook Ln, Charlotte, North Carolina 28277. Plaintiff InVue is owned by ASSA ABLOY Global Solutions, Inc., a wholly owned subsidiary of ASSA ABLOY Inc., which is a wholly owned subsidiary of ASSA ABLOY AB.

2.      On information and belief, Defendant Indyme is a company organized and existing under the laws of the United States of America, is incorporated in Delaware, and has its headquarters located at 8295 Aero Place, Suite 260, San Diego, California 92123.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action involves claims arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.      The Court has personal jurisdiction over Defendant Indyme at least because it is organized under Delaware law and thus resides in this District.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(c) and 1400(b), because Indyme is a resident in this District.

## BACKGROUND

6.      On March 12, 2024, the USPTO issued the '694 Patent, entitled "system providing self-service access to locked merchandise." A true and correct copy of the '694 Patent is attached hereto as Exhibit A.

7.      On April 8, 2025, the United States Patent and Trademark Office ("USPTO") issued the '910 Patent, entitled "system providing self-service access to locked merchandise." The '910 Patent is a continuation of the '694 Patent. A true and correct copy of the '910 Patent is attached hereto as Exhibit B.

8.      On September 16, 2025, the USPTO issued the '661 Patent, entitled "theft deterring product display." A true and correct copy of the '661 Patent is attached hereto as Exhibit C.

9.      Indyme purports to be the owner of each of the Patents-in-Suit.

## INVUE AND ITS LIVE LOCKS PRODUCT LINE

10.      InVue is a global provider of intelligent hardware and software technology for retail asset protection, access control, and loss prevention. The company traces its roots to Alpha

2

Enterprises, a product design and retail security company founded in 1972 in North Canton, Ohio, that pioneered merchandise security solutions through the 1980s and 1990s. InVue Security Products Inc. was formed in 2007 as the successor to Alpha's retail security business, and is today headquartered in Charlotte, North Carolina. Today, InVue operates in more than 90 countries, holds over 180 patents, and serves leading retailers across a broad range of industries, including consumer electronics, health and beauty, sporting goods, and mobile carriers. In January 2022, InVue launched its LIVE Locks product line — a family of digital smart locks that integrate with InVue's management software. The LIVE Locks product line has been offered for sale by InVue in the United States since its introduction more than four years ago and is deployed by leading retailers worldwide.

**DEFENDANT'S DEMAND LETTERS AGAINST PLAINTIFF INVUE**

11. In approximately March 2024, Indyme contacted Walmart Inc. regarding a Walmart request-for-proposal ("RFP") process in which InVue was a participant. On information and belief, Indyme advised Walmart that features called for by the RFP allegedly read on claims of Indyme's issued patents — including U.S. Pat. Nos. 9,196,136; 11,182,803; 11,216,827; 11,599,891; 11,631,089; 11,887,131 and 11,928,694 — and that Walmart and any of its solution providers could face potential infringement challenges if they pursued the RFP technology. Walmart notified InVue of Indyme's communications.

12. On March 22, 2024, counsel for Plaintiff InVue sent a letter to Indyme demanding that Indyme immediately cease and desist communications with Walmart and any other InVue customer regarding InVue's products. A copy of the March 22, 2024 letter is attached as Exhibit D-1.

13. On April 2, 2024, Indyme responded to InVue's March 22, 2024 letter. In its response, Indyme insisted that they never mentioned InVue products, however, Indyme

3

acknowledged that it had contacted Walmart regarding the RFP features and Indyme's patent portfolio. A copy of the April 2, 2024 letter is attached as Exhibit D-2.

14.    On June 1, 2026, Benjamin C. Deming of DNL Zito, counsel for Indyme, sent a letter to InVue's Chief Executive Officer David Glenn (the "June 1 Notice Letter"). The June 1 Notice Letter expressly identified itself as "formal notice that InVue's Live Lock products infringe claims of U.S. Pat. No. 11,928,694; U.S. Pat. No. 12,271,910; and U.S. Pat. No. 12,417,661," and further asserted anticipated infringement of U.S. Patent Application No. 19/098,728 upon issuance of allowed claims[1]. A copy of the June 1 Notice Letter is attached as Exhibit E-1.

15.    The June 1 Notice Letter further alleged that "the Live Lock product, alone or in connection with InVue's OneKEY app, directly and indirectly infringes the Indyme Patents indicated above by offering users a system for self-service access to locked merchandise." Ex. E-1.

16.    On June 9, 2026, while InVue was publicly demonstrating its LIVE Lock products[2] at the NRF Protect Expo in Grapevine, Texas (events expressly referenced in the June 1 Notice Letter), Mr. Deming—counsel for Indyme—approached InVue employees in person at

---

[1] InDyme's June 1 Notice Letter also asserts the U.S. Patent Application No. 19/098,728 "will also be infringing upon issuance," which is a member of the same patent family as the '694 and '910 Patents. Because App. No. 19/098,728 has not yet issued, this Court may not have subject matter jurisdiction over a declaratory judgment claim directed to that application. *See GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 481–83 (Fed. Cir. 1996). InVue accordingly does not seek declaratory relief as to App. No. 19/098,728 in this Complaint, but expressly reserves the right to supplement under Rule 15(d) to add a count for declaratory judgment of non-infringement of any patent issuing from App. No. 19/098,728 promptly upon issuance. *See Intel Corp. v. AmberWave Sys. Corp.*, 233 F.R.D. 416, 418–19 (D. Del. 2005) (granting Rule 15(d) supplementation to add later-issued patent where "the technology is closely enough related that the same [accused] devices are accused of infringing both patents," and holding the supplemental Declaratory Judgment complaint relates back to original filing date for first-to-file purposes).

[2] https://invue.com/smart-locks/live-locks

the trade show and questioned them about the operation of InVue's accused LIVE Lock products without disclosing that he was counsel for Indyme. Mr. Deming further noted that the InVue employees should be concerned. In view of the June 1 Notice Letter, Mr. Deming's behavior at the NRF Protect Expo amounts to an implicit threat of litigation against InVue.

17.    On June 15, 2026, counsel for InVue sent a letter to Mr. Deming responding to the June 1 Notice Letter, denying that InVue's LIVE Lock and OneKEY products infringe any claims of any of the Patents-in-Suit, and setting forth substantive non-infringement and invalidity defenses. A copy of the June 15, 2026 response letter is attached as Exhibit E-2.

### DECLARATORY JUDGMENT IS APPROPRIATE

18.    InVue has manufactured, used, sold, or offered for sale the products accused by Indyme of infringing the Patents-in-Suit in the United States and within the statute of limitations for patent infringement and continues to do so. Therefore, while InVue specifically denies any act of infringement, either directly or indirectly, either literally or under the doctrine of equivalents, based on Indyme's allegations that InVue's LIVE Lock and OneKEY products infringe the Patents-in-Suit—including by formal written notice from Indyme's counsel, by an in-person approach to InVue employees at the Grapevine, Texas trade show, by Indyme's prior outreach to InVue's customer Walmart on the same patent family, and by Indyme's parallel enforcement campaign against Darko Inc. on the very same Patents-in-Suit (*see Indyme Solutions, LLC v. Darko Inc.*, No. 1:25-cv-02329 (N.D. Ohio filed Oct. 29, 2025)) —InVue has a reasonable apprehension that Indyme will file an action against InVue based on the Patents-in-Suit.

19.    Indyme's wrongful assertion of the Patents-in-Suit against InVue's products has caused, and will continue to cause, InVue irreparable injury and damage.

20.    InVue's LIVE Lock and OneKEY products do not infringe and have not infringed, either directly, indirectly, or under the doctrine of equivalents, any claim of any of the Patents-in-Suit. In view of Indyme's allegations in its June 1 Notice letter that InVue's LIVE Lock and OneKEY products infringe the Patents-in-Suit, a substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

**COUNT I**
**(Declaratory Judgment of Non-Infringement of the '694 Patent)**

21.    InVue realleges and incorporates by reference all prior allegations above.

22.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between InVue and Indyme at least with respect to Indyme's assertion that InVue's LIVE Lock and OneKEY products infringe one or more claims of the '694 Patent.

23.    InVue's allegedly infringing products do not practice any of claims 1-39 of the '694 Patent either literally or under the doctrine of equivalents.

24.    For example, InVue's Accused Products do not practice or include all of the claimed elements of independent claim 1 of the '694 patent, including at least the following: a "mobile device" and "the individual utilizes a mobile device as a user interface."

25.    InVue's Accused Products do not practice claims 2-39, which depend from independent claim 1, for at least the same reason.

26.    InVue expressly reserves the right to assert additional grounds of noninfringement after having the ability to conduct discovery and the Court has construed the claims, if necessary. In view of the foregoing, InVue seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of InVue's Accused Products do not infringe any claim of the '694 Patent, whether directly or indirectly, under any theory of induced or contributory infringement. A judicial determination of the respective rights of the parties with respect to noninfringement of

6

the claims of the '694 Patent is necessary and appropriate under 28 U.S.C. § 2201 and § 2202 to resolve the parties' dispute regarding alleged infringement of the '694 Patent.

**COUNT II**
**(Declaratory Judgment of Non-Infringement of the '910 Patent)**

27.    InVue realleges and incorporates by reference all prior allegations above.

28.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between InVue and Indyme at least with respect to Indyme's assertion that InVue's LIVE Lock and OneKEY products infringe one or more claims of the '910 Patent.

29.    InVue's allegedly infringing products do not practice any of claims 1-40 of the '910 Patent either literally or under the doctrine of equivalents.

30.    For example, InVue's Accused Products do not practice or include all of the claimed elements of independent claims 1 and 40 of the '910 patent, including at least the following: "providing a database of individuals who have opted into the self-service method." InVue's Accused Products do not practice claims 2-39, which depend from independent claim 1, for at least the same reason.

31.    InVue expressly reserves the right to assert additional grounds of noninfringement after having the ability to conduct discovery and the Court has construed the claims, if necessary.

32.    In view of the foregoing, InVue seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of InVue's Accused Products do not infringe any claim of the '910 Patent, whether directly or indirectly, under any theory of induced or contributory infringement. A judicial determination of the respective rights of the parties with respect to noninfringement of the claims of the '910 Patent is necessary and appropriate under 28 U.S.C. § 2201 and § 2202 to resolve the parties' dispute regarding alleged infringement of the '910 Patent.

7

## COUNT III
### (Declaratory Judgment of Non-Infringement of the '661 Patent)

33.     InVue realleges and incorporates by reference all prior allegations above.

34.     An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between InVue and Indyme at least with respect to Indyme's assertion that InVue's LIVE Lock and OneKEY products infringe one or more claims of the '661 Patent.

35.     InVue's allegedly infringing products do not practice any of claims 1-20 of the '661 Patent either literally or under the doctrine of equivalents.

36.     For example, InVue's Accused Products do not practice or include all of the claimed elements of independent claims 1 and 18, including at least the following: "require a user to input a phone number in order to request the unique digital key" and "providing the digital key, generated by the digital key module, to a user device, upon receiving the phone number via the web portal."

37.     InVue's Accused Products do not practice claims 2-9 and 19-20, which depend from independent claims 1 and 18 respectively, for at least the same reason.

38.     Further, InVue's Accused Products do not practice or include all of the claimed elements of independent claim 10, including at least the following: "an access module configured to transmit a digital key, generated by a digital key module, for the lock associated with the product display."

39.     InVue's Accused Products do not practice claims 11-17, which depend from independent claim 10, for at least the same reason.

40.     InVue expressly reserves the right to assert additional grounds of noninfringement after having the ability to conduct discovery and the Court has construed the claims, if necessary.

41.     In view of the foregoing, InVue seeks and is entitled to declaratory judgment that the use, sale, and offer for sale of InVue's Accused Products do not infringe any claim of the '661 Patent, whether directly or indirectly, under any theory of induced or contributory infringement. A judicial determination of the respective rights of the parties with respect to noninfringement of the claims of the '661 Patent is necessary and appropriate under 28 U.S.C. § 2201 and § 2202 to resolve the parties' dispute regarding alleged infringement of the '661 Patent.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, InVue demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff InVue prays for the following judgment and relief against Defendant Indyme:

A.  Declaratory judgment that InVue's use, sale, offer for sale, and/or importation of products does not infringe the '694 Patent directly, indirectly, or under the doctrine of equivalents;

B.  Declaratory judgment that InVue's use, sale, offer for sale, and/or importation of products does not infringe the '910 Patent directly, indirectly, or under the doctrine of equivalents;

C.  Declaratory judgment that InVue's use, sale, offer for sale, and/or importation of products does not infringe the '661 Patent directly, indirectly, or under the doctrine of equivalents;

D.  A declaration that this is an exceptional case and an award of InVue's costs and attorneys' fees in accordance with 35 U.S.C. § 285 or other applicable law; and

E.  An award of such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Nathan R. Hoeschen
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Lionel M. Lavenue, Esq.
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, 8th Floor
Reston, VA 20190-6023
 (571) 203-2700

Dated: June 29, 2026

10